IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| Shelly M. Puklich, | ) | |
|---|---|---|
| | ) | **ORDER GRANTING** |
| Plaintiff, | ) | **DEFENDANT'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| vs. | ) | |
| | ) | Case No. 1:10-cv-041 |
| Patrick R. Donahoe, Postmaster General, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is the Defendant's "Motion for Summary Judgment" filed on May 30, 2012. See Docket No. 16. The Plaintiff, Shelly Puklich, filed a response on August 1, 2012. See Docket No. 23. The Defendant filed a reply brief on August 2, 2012. See Docket No. 24. For the reasons set forth below, the Court grants the Defendant's motion.

I.  **BACKGROUND**

Shelly Puklich is employed as a mail processing clerk by the United States Postal Service ("USPS") in Bismarck, North Dakota. Puklich filed a complaint alleging gender discrimination, sexual harassment, and retaliation for reporting this activity while she worked for USPS. See Docket No. 1. The Defendant filed a motion for summary judgment seeking to dismiss all of the claims asserted by Puklich. See Docket No. 16. Puklich filed a brief response in opposition to the motion on August 1, 2012. See Docket No. 23.

1

## II. LEGAL DISCUSSION

### A. GENDER DISCRIMINATION AND SEXUAL HARASSMENT

Puklich has presented claims for gender discrimination and sexual harassment in her complaint. However, Puklich failed to present any factual or legal arguments or evidence in opposition to the Defendant's motion concerning those particular claims. Rather, Puklich appears to have abandoned her claims of gender discrimination and sexual harassment, stating that this case "is about retaliation." See Docket No. 23, p. 1. When a party fails to properly address assertions made by the opposition in a motion for summary judgment, the Court has the discretion to treat the assertions as undisputed facts and grant summary judgment if the movant is entitled to it. Fed.R.Civ.P. 56(e). The record reveals the Defendant presented competent evidence in support of the motion for summary judgment. Left unopposed, the evidence demonstrates there are no genuine issues of material fact concerning the claims of gender discrimination and sexual harassment. Accordingly, the Court grants the Defendant's motion for summary judgment as to Puklich's claims of gender discrimination and sexual harassment.

### B. RETALIATION

Puklich contends that the 2009 elimination of three "bid job" positions and a subsequent reposting of the three new jobs—resulting in a change in scheduled days off for the three postal clerks—was done in retaliation for Puklich's prior EEO activity in 2004 and 2007. Puklich alleges the Defendant unlawfully retaliated against her after she reported workplace discrimination and sexual harassment to the Equal Employment Office. "Title VII makes it unlawful for the employer to 'discriminate against any of his employees or applicants for employment . . . because he has

opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge' of discrimination against the employer." Tyler v. Univ. of Ark. Bd. of Trs, 628 F.3d 980, 985 (8th Cir. 2011) (quoting 42 U.S.C. § 2000e-3(a)). It is well-established that Title VII's anti-retaliation provision prevents employers from retaliating against employees who have acted to vindicate their statutorily protected rights by reporting harassment or discrimination in the workplace. Bannum v. Mo. Dep't of Corr., 518 F.3d 542, 547 (8th Cir. 2008).

Puklich's retaliation claim is based on circumstantial evidence and, as such, the *McDonnell Douglas* three-part burden-shifting analysis is used to determine whether she presents a viable claim for retaliation. Erenberg v. Methodist Hosp., 357 F.3d 787, 793 (8th Cir. 2004). Under *McDonnell Douglas*, Puklich must first establish a prima facie case for retaliation which includes showing that:

(1) she engaged in protected conduct;

(2) she was subjected to a materially adverse action that would deter a reasonable employee from making a charge of employment discrimination; and

(3) there is a causal nexus between the protected conduct and the adverse action.

Tyler, 628 F.3d at 985 (original citations omitted). If Puklich establishes a prima facie case, the burden shifts to the Defendant to rebut the claims by advancing a legitimate, non-retaliatory reason for the adverse employment action. Id. at 987-89. If the Defendant does so, Puklich must then show the proffered reason is pretext for intentional retaliation in order to avoid summary judgment.

As previously noted, Puklich essentially contends the Defendant retaliated against her by "reposting" her position on March 19, 2009. The record reveals the Defendant eliminated three "bid job" positions, including Puklich's position, and reposted three new "bid job" positions, one of which Puklich secured. The net result of the reposting was that Puklich's work schedule was

3

modified. The record reveals the Defendant "reposts" positions, rather than simply modifying work schedules, pursuant to an agreement with the American Postal Workers Union. See Docket No. 17, pp. 19-20.

> Postal clerks hold what are called 'bid jobs' which are for specific days and times, and which are awarded largely based on seniority. In simplified terms, when a bid job is reposted it means that a particular day/time shift is being eliminated, frequently accompanied by a new shift being offered at a different day/time.

See Docket No. 19, p. 3. As a result of the reposting, Puklich's scheduled days off became weekdays, rather than weekends, and her opportunities to work overtime decreased. Puklich contends the Defendant took these actions to retaliate against her for reporting workplace discrimination and harassment in 2004 and 2007. Assuming Puklich established a prima facie case for retaliation, the Defendant has offered a legitimate, non-retaliatory reason for reposting Puklich's position. The Defendant contends it did so to reduce staffing costs.

Jeffrey Hubert, the USPS plant manager in Bismarck during the relevant time period, submitted an affidavit to explain the circumstances that led to the reposting of Puklich's position. See Docket No. 19. Hurbert's affidavit provides a detailed background about the operations at the USPS facility in Bismarck as follows:

> 3. At the time I was Acting Plant Manager in Bismarck, USPS was in the midst of on-going efforts to reduce costs and maximize efficiencies to offset declining mail revenues, including those brought about by the nationwide economic downturn. As Acting Plant Manager I was under general orders to make changes in an attempt to accomplish cost savings while maintaining customer service.
>
> 4. One area of potential cost savings identified was a rebalancing of scheduled days off for various shifts (called "Tours" by USPS) in an attempt to reduce unnecessary non-scheduled overtime ("NS OT").
>
> 5. The USPS Processing and Distribution Facility in Bismarck typically operates 24 hours a day, seven days a week. Postal clerks who sort mail are generally scheduled

4

for eight hour shifts, five days a week, with management striving to give employees two consecutive scheduled days off ("SDO"), to avoid "split" SDOs. Occasionally, depending on workload and staffing, workers on a shift may be asked to stay on beyond eight hours, perhaps for an hour or two, for which they are compensated at time and a half. If the workload warrants it, workers who elect to sign up for additional overtime may be called in for non-scheduled overtime ("NS OT"). NS OT is paid at time and a half, with a guaranteed eight hours pay, even if less than eight hours is worked. If an NS OT clerk works more than eight hours, they are paid double time. There are also increased rates of pay for work at certain times, including a 25% premium for workers scheduled on Sunday and an increased rate for work performed between 6:00 p.m. and 6:00 a.m. Some overtime, including NS OT is to be expected given the staffing limitations of USPS such as avoiding split SDOs, variability of the mail volume and the like.

6. As incoming Acting Plant Manager I was given NS OT goals by USPS senior management in late December 2008 and early February 2009. Managing in an attempt to minimize NS OT is a recognized, sound and common business practice at USPS. It had been a performance indicator since well before I served as a detailee in Bismarck.

7. In reviewing the Bismarck facility, I found the Saturday and Monday Tour 1 shifts had a disproportionate amount NS OT. My best recollection today is that somewhere around two-thirds of NS OT was on Saturdays and Mondays, compared with the remaining five days of the week. Much of this is attributable to clerks wanting to have both Saturday and Sunday as their SDO.

8. In an attempt to lower ND OT and increase productivity, it was my goal to rebalance work assignments with respect to SDO, with the expectation being that reducing the number of clerks with Saturday and Sunday off would increase the number of scheduled workers on those days, resulting in reduced need for ND OT on Saturday and Monday (mail is processed on Sunday, but not delivered, so increased mail processing on Sunday positively impacts clerk workload on Monday).

9. Upon arriving in Bismarck, I held extensive discussions during February 2009 and early March 2009 with union officials regarding attempts to address NS OT, including the reposting of bid jobs, the number of jobs to repost and the best means to try achieve NS OT reductions while minimize disruption to employees (e.g. avoiding split SDOs). Postal clerks hold what are called "bid jobs" which are for specific days and times, and which are awarded largely based on seniority. In simplified terms, when a bid job is reposted it means that a particular day/time shift is being eliminated, frequently accompanied by a new shift being offered at a different day/time.

10. On or around March 2, 2009 I informed union officials that USPS would be abolishing three bid jobs, namely the positions then held by David Ziesler, Lisa Kringle, and Shelly Puklich. Those three bid jobs were selected because they were the lowest seniority clerks on the day/time shifts targeted to reduce NS OT. On March 19, 2009 letters were sent to the three informing them that it was necessary to change their SDOs and reposting their assignments.

See Docket No. 19, pp. 1-4 (errors in original).

As manager, Hubert's duties included staffing for the Bismarck USPS facility. Huber stated that in early 2009 "USPS was in the midst of on-going efforts to reduce costs and maximize efficiencies to offset declining mail revenues, including those brought about by the nationwide economic downturn." See Docket No. 19, p. 1. Hubert claims he was given orders to reduce costs, and a potential cost savings he identified was to modify the employees' work schedules in order to decrease overtime.

Hubert's affidavit reveals that he met with the American Postal Workers Union to address potential changes to employees' work schedules by reposting positions. In March 2009, Hubert made the decision to eliminate, and then repost, three "bid jobs," based in part on the following:

Review of the staffing matrix showed 3 to 5 too many Saturday/Sunday Scheduled day off (SDO) bids. To reduce the high incident of Tour 1 Saturday delivery day OT we chose to abolish the 3 junior clerks with weekends off and subsequently posted 3 new jobs with days off during the week. . . . The plan was to move further weekend bids if the first 3 changes did not yield the desired NS day OT reductions.

See Docket No. 19, p. 4. Hubert further explained that the three bid jobs he reposted were held by postal workers with the least seniority, including Puklich. See Docket No. 19, pp. 3-4. The reposting was not meant to eliminate overtime. Rather, Hubert expected that reposting would reduce overtime. See Docket No. 19, p. 5. Hubert also explained that he moved to Bismarck in January 2009 to become interim plant manager, and he did not know Puklich prior to that time. Hubert stated that

6

Puklich's reports of workplace discrimination and harassment were not factors he considered in reposting her position. See Docket No. 19, p. 6.

In Puklich's response to the motion for summary judgment, she provided the following argument in opposition:

> Plaintiff had her bid job for thirteen years with Friday and Saturday nights off, along with the accompanying Sunday premium pay and the ability to work overtime on her days off, in particular Friday nights. This was removed from her on March 19, 2009, for no good business reason, and her employer had to go through two of her co-workers to get to her (Ex. 10, 11, 12, 13).

See Docket No. 23, p. 2.

Puklich cites to exhibits, which include two affidavits, in support of her contention that the Defendants had "no good business reason" for reposting her position. The affidavits were submitted by Dave Zeiszler and Lisa Kringlie, two co-workers whose positions were also reposted along with Puklich's position. Dave Zeiszler's affidavit provides in relevant part:

> I believe [USPS] targeted Ms. Puklich in retaliation for her sexual harassment claims against the Post Office. There is no other logical or reasonable explanation.
> From a business standpoint, what they did to the three of us made no business sense. The work had to be done anyway, and I believe they ended up paying more overtime with the shift changes.
> With the shift change, Ms. Puklich, Ms. Kringlie and I worked Friday nights. The Post Office still paid 3-4 persons to work overtime on Friday nights. Their justification for the shift change was eliminating Friday night overtime. That never happened. The only change that happened is that the three of us lost our weekend off shifts.

See Docket No. 23-10, pp. 1-2 (errors in original). Lisa Kringlie states as follows:

> I know this allegation [of retaliation] to be true because the Post Office had to take the same action against me and Mr. Dave Zeiszler in March, 2009, in order to get to Ms. Puklich. Mr. Zeiszler and I also lost our weekends off and the ability to make more overtime wages.
> I had weekends off for 15 years. The justification of the Post Office was that they had to eliminate Friday night overtime. However, the Post Office still had

7

>people work overtime on Friday night. The changing of the shifts of myself, Dave Zeiszler, and Shelly Puklich did not eliminate overtime on Friday nights and indeed made no sense.
>
>I believe that Shelly Puklich was targeted by the Post Office in doing this shift change in March, 2009. I believe she was targeted because of complaints she made against the Post Officer for sexual harassment. There is no other reasonable or logical explanation. Indeed, Mr. Larry Jahner [a co-worker that Puklich alleged sexually harassed her in an EEO complaint] benefited from the shift change in March, 2009.

See Docket No. 23-12, pp. 2-3 (errors in original).

To avoid summary judgment, Puklich must offer competent evidence or point to evidence in the record which demonstrates that the non-retaliatory reason offered by the Defendant is, in fact, a pretext for unlawful retaliation. The only relevant evidence Puklich offered to support her opposition to summary judgment are the two affidavits quoted above. Affidavits may be offered to support or oppose a motion for summary judgment. Fed.R.Civ.P. 56(c)(4). Such affidavits must be made on personal knowledge and include sufficient factual support to demonstrate the affiant is competent to testify on the matters stated. Id.; El Deep v. Univ. of Minn., 60 F.3d 423, 428-29 (8th Cir. 1995).

In the affidavits submitted by Puklich, the affiants state that the reposting has failed to eliminate all incidents of overtime. Although these statements appear to be based on personal knowledge, the statements fail to demonstrate the Defendant's stated reason for reposting Puklich's position was a pretext for retaliation. The statements are consistent with the Defendant's stated reason for reposting. Manager Hubert explained that he did not attempt to eliminate overtime, but rather attempted to reduce overtime. See Docket No. 19, p. 5 ("[I]t was not intended to eliminate NS OT altogether."). The Defendant's attempts to reduce costs, by decreasing overtime, is a legitimate, non-retaliatory reason for modifying Puklich's schedule. The statements that the reposting failed to

eliminate all overtime does not tend to show the Defendant's proffered reason for reposting Puklich's position is a ruse for retaliation.

In addition, the affidavits offered by Puklich provide conclusory statements that the reposting "makes no business sense;" the Defendant retaliated against Puklich because "[t]here is no other reasonable or logical explanation;" and that the Defendant had to repost Zeiszler and Kringlie's positions just to "get to" Puklich. The conclusory statements fail to demonstrate the Defendant's non-retaliatory reason for reposting was a subterfuge for retaliation. See Haas v. Kelly Servs. Inc., 409 F.3d 1030, 1036 (8th Cir. 2005) (original citation omitted) ("Evidence, not contentions, avoids summary judgment."), *abrogated on other grounds by* Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011).

The Court has carefully reviewed the entire record and finds that Puklich has failed to demonstrate that a genuine issue of material fact exists as to whether the Defendant's non-retaliatory reason for reposting her job was a pretext for unlawful retaliation. Accordingly, the Court grants the Defendant's motion for summary judgment as to Puklich's retaliation claim.

## IV. CONCLUSION

The Court has carefully reviewed the entire record and relevant case law. For the reasons set forth above, the Court **GRANTS** the Defendant's "Motion for Summary Judgment" (Docket No. 17).

**IT IS SO ORDERED.**

Dated this 25th day of October, 2012.

/s/ Daniel L. Hovland
Daniel L. Hovland, District Judge
United States District Court